## Simpson *v.* Meyers.

*Tax sales — Return of tax collector — Property on land — Seated land.*

Where a tax collector wrongfully returns that he could find no property on seated land from which the taxes could be made, and the treasurer sells the land as a consequence of the return, the owner or his grantee in an action of ejectment to recover the land may show that at the time the return was made there was property on the land, which by reasonable diligence on the part of the collector could have been seized and sold for the taxes.

Unless the jurisdictional prerequisites of the acts of assembly relating to tax sales are complied with, the sales are void, and the treasurer's deeds pass no title to the purchasers.

*Tax sales — Seated and unseated lands — Act of April 3, 1804.*

The act of April 3, 1804, entitled "An Act directing the mode of selling unseated lands for taxes" has no application to the assessments and sale of seated lands.

*Tax sales — Seated lands — Void sale — Redemption — Act of March 13, 1815, 6 Sm. L. 299.*

Where a tax sale of seated land is void for want of authority to make it, the owner of the land is not required to redeem it as provided in the 4th section of the act of March 13, 1815, and his failure to redeem cannot be set up against him as a defense to his recovery of the land by an action of ejectment.

*Appeals — Assignments of error — Exception — Evidence.*

The Supreme Court will not consider an assignment of error to the rejection of a paper where no exception was taken to the ruling at the trial.

*Appeals — Harmless error — Clerical error in entering judgment.*

Where in ejectment the pleadings and verdict show that judgment should have been entered for the undivided third of the premises in dispute, and it appears that the judgment was entered for the whole land, the clerical error may be corrected without a reversal of the judgment.

Argued Oct. 11, 1900. Appeals, Nos. 40, 41, 42 and 43, by defendants, from judgment of C. P. Venango Co., Jan. T., 1899, Nos. 35, 36, 37 and 38, on verdict for plaintiff in case of S. H. Simpson v. Emma J. Meyers et al. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Ejectment for an undivided one-third interest in land in Cornplanter township. Before Criswell, P. J.

At the trial the defendant claimed title under a tax sale. The plaintiff maintained that the sale was invalid, because at the time the return of no property was made by the collector, there was in fact property on the land sufficient to meet the taxes.

Defendant's points were as follows:

1. The question whether there was personal property upon the land sufficient for the payment of the taxes is not now open to inquiry. *Answer:* Refused. [1]

2. This action is barred by the 3d section of the act of April 3, 1804, and by the 4th section of the act of March 13, 1815. *Answer:* Refused. [2]

The court charged in part as follows:

[Now, we will ask you to render a special verdict which will consist of a negative or affirmative answer to this question: Was there, during the year 1871, on the tract of land referred to as containing 170 acres, assessed to McAboy, Devoe et al., any property liable for taxes, which, by reasonable diligence on the part of the collector of taxes for said township, might have been seized and sold in satisfaction and payment of said taxes? The evidence in reference to this fact, as we have stated, is all evidence on the part of the plaintiff. No witness has been called on the part of the defendants in reference to it. Now, what do you say in reference to that inquiry, yes or no? If you find there was property there liable to have been seized, and which, by reasonable diligence on the part of the collector, might have been seized in satisfaction of the taxes, you will say, "Yes." If you will find there was not property there which, by reasonable diligence, might have been seized, your answer will be "No." Verdict, "Yes."

The court: Your answer to the inquiry being in the affirm-

ative as indicated, we now instruct you to render a verdict in favor of the plaintiff for one undivided third part of the six acres described in the writ.] [3]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them; (4, 5) rulings on evidence; (6) in entering judgment for the whole land on a verdict for one undivided third thereof.

*C. Heydrick,* with him *J. L. Mattox* and *C. I. Heydrick,* for appellant.—The paramount object of the legislature was to secure the payment of taxes upon lands by public sales thereof. But obviously it would have been a vain thing to invite the public to purchase, if it were understood that oral evidence of the existence of things in pais, the unascertained nonexistence of which was made a condition precedent to the sale, could, after the lapse of more than a quarter of a century, defeat the title: Ash v. Ashton, 3 W. & S. 510; Royal British Bank v. Turquand, 6 Ellis & Blackburn, 327; Town of Coloma v. Eaves, 92 U. S. 484.

This action is barred by the 3d section of the act of April 3, 1804, and by the 4th section of the act of March 13, 1815.

*J. H. Osmer,* with him *A. R. Osmer* and *N. F. Osmer,* for appellee.—Prima facie the assessment, as an official act, determines the character of the land, but only prima facie: Miller v. McCullough, 104 Pa. 624.

The return of the collector has never been held to be more than prima facie evidence either of the nonpayment of taxes or the absence of personal property upon seated land. The falsity of the return in respect to either has always been open to proof: Montgomery v. Meredith, 17 Pa. 42; Breisch v. Coxe, 81 Pa. 336; McReynolds v. Longenberger, 57 Pa. 13; Pottsville Lumber Co. v. Wells, 157 Pa. 5; Marsh v. Nelson, 101 Pa. 51.

Neither the act of April 3, 1804, nor the provisions of the act of 1815 have any applicability to this case: Smith v. McGrew, 4 W. & S. 338; Parish v. Stevens, 3 S. & R. 298.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901:
These four cases may be considered together. The questions

of law and fact set forth in each case are practically the same.

These were actions of ejectment by the plaintiff against the defendants to recover the undivided one third of certain parcels of land in Cornplanter township, Venango county. The title to 170 acres of land of which the pieces in dispute formed a part was conceded to be in John Nevins, who by deed dated July 6, 1863, conveyed it to Joseph Ross, the ancestor of Mrs. Meyers, the principal defendant, and eight other persons as tenants in common. By subsequent conveyances the title to the undivided one third of the Nevins land was vested in the plaintiff.

In 1871 the whole tract of 170 acres was assessed as seated land at a valuation of $1,000, and an engine thereon was valued at $200 making a total assessment of $1,200. The taxes levied amounted to $42.60. The collector of taxes for Cornplanter township for 1871 made a return of these taxes to the commissioners, certifying that he could find no property on the land out of which the taxes could be made. The record of the collector's return, the treasurer's sales book, and the record of the acknowledgment of the treasurer's deed showed that the one half of the tract was sold June 11, 1872, to Bredin and Algeo. The treasurer's deed to the purchasers recites the sale of and conveys the whole tract. By deed dated November 14, 1874, Bredin and Algeo conveyed the title thus acquired to Joseph Ross. His title to the premises became vested in the defendants, and under it they deny the right of the plaintiff to recover in these actions.

On the trial of the cause in the court below the learned judge held that if there was during the summer of 1871, on the land sold by the treasurer, any property which by reasonable diligence on the part of the collector could have been seized and sold in satisfaction and payment of the taxes against the property, the treasurer had no authority to sell the land and the purchasers acquired no title by the treasurer's sale. He held this to be the controlling question in the case, and submitted it to the jury with instructions that if they answered it in the affirmative, they should return a verdict for the plaintiff. The jury found for the plaintiff and a judgment was entered on the verdict.

The first two assignments of error are based on the refusal

of the court to affirm the two points for charge presented by the defendants. The first point asked the court to instruct the jury that " the question whether there was personal property upon the land sufficient for the payment of the taxes is not now open to controversy;" and the second point was that " this action is barred by the 3d section of the act of April 3, 1804, and by the 4th section of the act of March 13, 1815." These assignments raise the principal and controlling questions in the case, and the learned counsel for appellants strenuously urge that both points should have received an affirmative answer.

The first point asked the court to hold that the treasurer's deed was conclusive as to the question whether there was personal property upon the land sufficient for the payment of the taxes, and that the deed precluded the plaintiff from showing the contrary.

This land was returned and sold on the seated list. The 41st section of the Act of April 29, 1844, P. L. 501, under which the sale was made, provides: " That all real estate within this commonwealth on which personal property cannot be found sufficient to pay the taxes assessed thereon, and where the owner or owners thereof neglect to pay the said taxes, the collectors of the township in which said lands lie shall return the same to the commissioners of the several counties; and the said lands shall be sold as unseated lands are now sold, in satisfaction of the taxes due by the said owner or owners." The sale of seated lands in the commonwealth is made under the provisions of this act. Without the authority therein given the tax officers have no power to institute any proceedings for the assessment and sale of land for the nonpayment of taxes on seated land. The jurisdiction being based on statutory authority, a strict adherence to its mandates must be observed, or the title of the owner of the land will not be divested. A sale without a compliance with the statute is simply null and void.

It will be observed that the act of 1844, does not confer authority to sell all lands for the payment of taxes. The power to sell for arrearages of taxes is explicitly limited to " all real estate on which personal property cannot be found sufficient to pay the taxes assessed thereon, and where the owner or owners thereof neglect or refuse to pay said taxes." When either of these requisites is wanting the collector is not author-

ized to return the land to the commissioners and the treasurer cannot sell it. It is absolutely necessary to a valid tax sale and the divesting of the owner's title that these statutory requirements be made to appear.

It is argued, however, by the learned counsel for the appellants that the determination of the question whether the elements of a valid tax title exist is for the treasurer, and if he determines that the statute conferring jurisdiction has been complied with and delivers a deed to the purchaser, it is conclusive against the owner of the real estate. We cannot agree with this contention. If it be true as above suggested that it was a necessary prerequisite to a valid sale of this land for taxes, that there was no personal property on it out of which the taxes could be made, then the sale by the treasurer was void, and his deed could pass no title. The effect, therefore, of making the deed conclusive of all jurisdictional facts would be to deprive the appellee of his land without legal authority, and to forfeit it through the unauthorized act of the treasurer. This is not done by statute and should not be done by construction. "The acts authorizing sales of land by the commissioners or treasurer are laws for collection of taxes; not to sacrifice individual property as a forfeiture:" Jenks v. Wright, 61 Pa. 410. This construction of the acts of assembly relative to the sale of lands for taxes is supported by the decisions of this court. While irregularities in the mode of exercising the power conferred by the acts are cured by statute, yet we have always held that unless the jurisdictional prerequisites of the acts of assembly are complied with, the sale is void, and therefore the treasurer's deed passes no title to the purchaser. The failure to comply with the acts of assembly in these respects may be shown by the owner of the land, and when such is made to appear, the deed is held not to be conclusive. In Stark v. Shupp, 112 Pa. 395, Mr. Justice GORDON, delivering the opinion of the court, says: "He claimed title by virtue of a tax sale made by the treasurer of the said county under the 41st section of the act of April 29, 1844. In order to establish his right to the possession claimed, under the act above stated, it behooved the plaintiff to show the treasurer's authority to make the sale, and to this end it ought to have appeared that all material conditions and prerequisites had been complied with; as that a tax

had been duly assessed upon the property by the proper officers; that such tax had not been paid, and that sufficient personal property could not be found on the premises out of which it could have been collected. Of the latter, the return of the collector is prima facie evidence, but the only proper proof of the former are the duplicates and assessments found in the commissioners' office."

We are of opinion that the treasurer's deed did not preclude the appellee from showing that at the time of the collector's return there was personal property on the premises sufficient to pay the taxes. The jury having found this fact in favor of the appellee, the treasurer's sale and deed passed no title to the premises to Bredin and Algeo, which would avail the appellants as a defense in these actions.

The learned judge of the court below was right in refusing to affirm the defendants' second point. The property in dispute was sold under the act of April 29, 1844, as seated land. The act of April 3, 1804, 4 Sm. L. 201, is entitled " An act directing the mode of selling unseated lands for taxes." This act has no application to the assessment and sale of seated lands. In Smith v. McGrew, 4 W. & S. 338, HUSTON, J., delivering the opinion of the court, says : " The act of April 3, 1804, relates solely and exclusively to unseated lands; its title is so and all its provisions, although the word unseated, is not always inserted before the word lands." In Stewart v. Trevor, 56 Pa. 374, it is distinctly held that the limitation prescribed in the act of 1804 applies only to unseated lands. In that case the court below so charged and this court held it to be correct. " The subject of the act of assembly," says STRONG J. (p. 385), " is unseated land. The assessments spoken of, the sales, the redemptions, the actions for the recovery of lands, whether brought by the purchaser at a sale or by the owner, and the limitations to such actions, have reference to unseated lands and to no other. It was, therefore, right to say that if the land for which the ejectment was brought was seated at the time of the assessment, the limitation prescribed in the statute has no applicability to the action." Even if the Act of March 13, 1815, 6 Sm. L. 299, applied to the sales of seated lands, the treasurer's sale being void for want of authority to make it, the owner was not required to redeem the land as provided in the 4th sec-

tion of the act.   Hence that act cannot be invoked as a defense in these actions.

The other assignments of error are without merit.   The tax sale being void, the title thereby acquired conferred on Joseph Ross and the parties claiming it through him no right to the premises in dispute.   Ross and those claiming under him held such title as they had under the grant from Nevins, and were tenants in common with the owners of the undivided interest in said land, but of course they did not hold the land adversely to their cotenants.

In the fourth assignment the appellants allege error in the rejection of the paper or contract dated February 16, 1863.   The ruling of the learned judge was right, but the assignment need not be discussed, as no exception was taken to the ruling by the defendants.

The fifth assignment cannot be sustained.   The contract of February 16, 1863, having been excluded, the testimony covered by this assignment would have availed the defendants nothing if it had been admitted.

If there was a clerical error in the entry of the judgment on the verdict as complained of in the sixth assignment, it can be corrected.   The pleadings and verdict show that judgment should have been entered for the undivided third of the premises in dispute.

The assignments of error are overruled and the judgment of the court below is affirmed.